[No. E050114. Fourth Dist., Div. Two. Apr. 26, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
JON WARREN LARSON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I., of the Analysis.

834

## COUNSEL

Gregory Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steve Oetting and Theodore M. Cropley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McKINSTER, J.**—Defendant and appellant Jon Warren Larson appeals after he was convicted of one count of inflicting corporal injury on a cohabitant. The conviction was a third strike for defendant, who was sentenced to 27 years to life. Defendant contends (1) the trial court erred in admitting evidence of a past uncharged incident, and (2) the admission of records of defendant's prior convictions violated his Sixth Amendment right of confrontation and cross-examination. We are unpersuaded, and affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

Defendant met Deborah Jessen in February of 2007. Both homeless, they spent the next few months together, staying variously at friends' homes; at motels; or sometimes without shelter, camping near a local riverbed. Jessen

received about $800 per month in Social Security Disability income; Jessen and defendant shared her money, and they panhandled together.

By June 2007, defendant and Jessen had been together for about four months. In the first week of June, they were sharing a room at a motel in Riverside. Neither defendant nor Jessen had any valid identification, so they prevailed upon a friend, Robert Tinsley, to rent the room for them. They used Jessen's money to pay for the room, however.

During the night and early morning hours of June 6 to 7, 2007, defendant and Jessen quarreled over their last cigarette. Jessen testified that, the next thing she knew, defendant had knocked her down and she was on the floor. Defendant proceeded to punch Jessen with his fists, bit her on the leg and arm, and choked her. Jessen blacked out.

When Jessen regained consciousness, she saw defendant in another part of the room, breaking an ashtray. Jessen seized the opportunity to get away and fled, naked, from the room. She found another resident outside his motel room and asked for help. The man gave Jessen his shirt, and let her inside his room.

Watching through the peephole, Jessen saw defendant leave in a car with one of defendant's relatives. Jessen ran back to her own room, put on some clothes, gathered her belongings, and went to a nearby hospital. Jessen was treated for several injuries, including a swollen right eye, a puffy and swollen face, a cut lip, and bite marks on her arm and leg.

Although defendant did not testify in his own behalf at trial, the defense theory was that Jessen suffered from mental instability, and had inflicted the injuries on herself. Thus, on cross-examination, Jessen testified that she had been diagnosed with bipolar disorder, among other things. She acknowledged having attempted suicide many times in the past, and she had both cut and burned herself in some of these attempts. She had also attempted eating glass or swallowing razor blades. On one occasion, while hospitalized, Jessen had become violent, kicking walls and hurting herself. She had been placed in a five-point restraint on that occasion. Jessen testified, however, that in recent years she had become more stable because she was taking medication.

Riverside Police Officer Gary Hirdler, who responded to the hospital, observed the injuries as described by Jessen: swollen and puffy face, swollen right eye, cut lip, and bite marks on her arm and thigh. Officer Hirdler testified that Jessen's account to him at the hospital was consistent with her trial testimony about the incident.

The trial court, over defendant's objection, permitted the prosecution to present the testimony of Breezy Turnage, a past acquaintance of defendant's,

about an incident in which he also bit her. In 2002, defendant was living in Turnage's home; they had an intimate relationship. During an incident in April 2002, defendant attacked Turnage; he punched her in the face and bit her on the chin and ear. The injury to Turnage's ear did not heal for several months, and the bite on her chin left a scar.

At trial, the defense rested without presenting any affirmative evidence. Defense counsel argued, however, either that Jessen inflicted the wounds on herself, or that the real perpetrator must have been Robert Tinsley, who had rented the motel room. While the jury was deliberating, defendant proceeded to admit four prior prison term allegations, and the court found true two prior serious felony (strike) allegations. The jury returned a guilty verdict.

After the verdict, defendant moved for a new trial. The court denied defendant's new trial motion, and sentenced him to a term of 25 years to life, as a third strike, plus one year for each of the prison term priors that were not also used as strike priors, for a total term of 27 years to life.

Defendant filed a timely notice of appeal.

## ANALYSIS

### I. *The Court Properly Admitted Evident of an Uncharged Offense**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. *Admitting the Certified Records of Defendant's Prior Convictions Did Not Violate the Confrontation Clause*

Defendant next contends that the trial court committed reversible error, and violated his Sixth Amendment right to confrontation and cross-examination, by admitting documentary evidence to prove his prior convictions.

Defendant's contention is without merit.

■ In the first place, defendant failed to raise any objection below to the admission of the documentary evidence. Normally, the failure to object forecloses consideration of the issue on appeal. (See Evid. Code, § 353; *People v. Catlin* (2001) 26 Cal.4th 81, 138, fn. 14 [109 Cal.Rptr.2d 31, 26 P.3d 357].)

---

*See footnote, *ante*, page 832.

Defendant argues, however, that his failure to object should not foreclose consideration on the merits. The United States Supreme Court decided *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. ___ [174 L.Ed.2d 314, 129 S.Ct. 2527], effecting a change in the law, only 13 days before the hearing on defendant's priors; defense counsel understandably could have been unaware of the recent decision and its implications at the time of defendant's hearing.

█ In *Melendez-Diaz v. Massachusetts, supra*, 557 U.S. ___ [174 L.Ed.2d 314, 129 S.Ct. 2527], the United States Supreme Court held that documentary evidence of, e.g., laboratory test results (there, certificates showing that substances seized and analyzed contained cocaine) were testimonial affidavits, and thus subject to the defendant's right to confrontation and cross-examination. (See *Crawford v. Washington* (2004) 541 U.S. 36, 51–52 [158 L.Ed.2d 177, 124 S.Ct. 1354].)

Defendant argues that the information in his prison priors packet (Pen. Code, § 969b) should be treated the same: documents are being admitted at a trial to prove an allegation against the defendant, and thus the preparer should be brought to court, and made subject to confrontation and cross-examination.

█ The matters in a prior-conviction packet under Penal Code section 969b are, however, nontestimonial in nature and thus not subject to *Crawford* and *Melendez-Diaz*. An out-of-court statement is "testimonial," and thus subject to the Sixth Amendment right of confrontation and cross-examination, "if (1) it is made to a law enforcement officer or by or to a law enforcement agent and (2) describes a past fact related to criminal activity for (3) possible use at a later trial" (*People v. Geier* (2007) 41 Cal.4th 555, 605 [61 Cal.Rptr.3d 580, 161 P.3d 104]), or " ' "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," [citation]; "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," [citation]; "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" [citation].' (*Crawford, supra*, 541 U.S. at pp. 51–52 [124 S.Ct. 1354].)" (*People v. Geier, supra*, 41 Cal.4th at pp. 597–598.) █ Although the documentary records of a defendant's past convictions and Department of Corrections and Rehabilitation history may happen to be offered as evidence (to prove such prior convictions) at a later trial, the records so proffered were not made primarily for that purpose. The records are made for other purposes in the ordinary course of other business of the courts and relevant departments. The records are needed and

maintained for these other purposes; they are not offered as evidence in any later trial unless and until an accused commits a new, additional offense. Thus, the records are not made in contemplation of, or primarily for the purpose of, providing evidence in a future trial against the defendant. The records are not testimonial. " '[R]ecords or copies of records of any state penitentiary, reformatory, county jail, city jail, or federal penitentiary in which [defendant] has been imprisoned' (Pen. Code, § 969b) are prepared to document acts and events relating to convictions and imprisonments. Although they may ultimately be used in criminal proceedings, as the documents were here, they are not prepared for the purpose of providing evidence in criminal trials or for determining whether criminal charges should issue. Therefore, these records are beyond the scope of *Crawford*, and the court properly admitted them and considered them for the statutory purposes." (*People v. Taulton* (2005) 129 Cal.App.4th 1218, 1225 [29 Cal.Rptr.3d 203]; *People v. Morris* (2008) 166 Cal.App.4th 363, 370–374 [83 Cal.Rptr.3d 253].)

## DISPOSITION

■ The trial court properly admitted the evidence of prior acts under Evidence Code section 1109. The documentary evidence of defendant's prior convictions was nontestimonial; the determination of the truth of defendant's prior convictions based on those documents did not violate defendant's Sixth Amendment confrontation rights. The judgment is affirmed.

Hollenhorst, Acting P. J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 27, 2011, S193524. Werdegar, J., did not participate therein.